WILSON & CO. *v.* NIFFENEGGER.

1. EVIDENCE—BILLS AND NOTES—LETTERS AUTHORIZING CREDIT—ADMISSIBILITY.

Where plaintiff wrote several letters to a local bank stressing its financial responsibility and authorizing the bank to honor drafts on it with bills of lading or express receipts attached made by a certain buyer covering shipments of poultry, and defendants, learning of said letters and relying thereon, shipped a consignment of poultry to plaintiff which it received and accepted but repudiated the draft, claiming to have paid said buyer therefor, although defendants had followed plaintiff's instructions, said letters *held*, admissible, in recoupment, to show that the consignment was secured by plaintiff on the strength of its credit.

2. BILLS AND NOTES—UNACCEPTED DRAFT—ESTOPPEL.

Although the payee of an unaccepted check or draft has no interest in the drawer's funds, and cannot maintain an action against a drawee thereon, he does have a right of action against a drawee who by some recognition in writing may have estopped himself from denying liability.

3. SAME—ACCEPTANCE.

Any words amounting to a promise to pay constitute an acceptance.

4. SAME—NEGOTIABLE INSTRUMENTS—ACCEPTANCE BEFORE DRAWN.

Under the negotiable instruments law (2 Comp. Laws 1915, §§ 6176, 6179) a bill may be accepted before it is drawn and be deemed an actual acceptance in favor of every person, who, upon the faith thereof, receives it for value.

Error to Van Buren; Des Voignes (L. Burget), J. Submitted June 8, 1920. (Docket No. 2.) Decided July 20, 1920.

Assumpsit by Wilson & Company against Fred Niffenegger and others, copartners as Niffenegger Brothers, for goods sold and delivered. Judgment for de-

fendants on a directed verdict. Plaintiff brings error. Affirmed.

*David Anderson*, for appellant.

*Chandler & Bessey*, for appellees.

STEERE, J.  Plaintiff is a corporation operating in beef and provisions, with packing houses in Chicago and other western points and branches at a number of leading cities, one of which is located at Grand Rapids, Michigan. Defendants are located in South Haven, Michigan, engaged in the meat business and had between February 16th and June 20, 1918, purchased of plaintiff bills of meat amounting to $463.66 on which was paid $321.83, leaving an unpaid balance of $141.83 which with legal interest to the time of the trial amounted to $153.65. Owing to a counterclaim which they had against plaintiff, defendants refused to pay that balance and this suit was brought to recover the same in the circuit court of Van Buren county. Upon the trial plaintiff's claim as above stated was admitted, the contention being over defendants' claim of set-off.

The material facts in the case are practically undisputed. The court sustained defendants' set-off and directed a verdict in their favor for $8.51, which, adding legal interest, exceeded plaintiff's claim to that amount, and entered judgment accordingly. Defendants' claim of set-off was for a consignment of 12 coops of chickens which they shipped by express, on December 28, 1916, from South Haven to plaintiff at its branch office in Grand Rapids, Mich., and there delivered to plaintiff, but for which defendants have never been paid. Quantity, quality, price and receipt of same are not disputed. Plaintiff's claim as to this shipment is that it had no contract relations with defendants, but bought the chickens from and paid for them to one Sauer.

The material circumstances in relation to the consignment of chickens, briefly stated, are as follows: On December 5, 1916, plaintiff sent a letter from its branch office to the Citizens' State Bank at South Haven saying:

"It will be satisfactory for you to honor drafts made against us by Mr. F. M. Sauer covering shipments of poultry, provided drafts have bill of lading or express receipts attached, until further advice."

On December 7th the bank replied stating it had not done business with Sauer along that line, and had no knowledge as to plaintiff's standing—suggesting another method of taking care of such drafts; to which the plaintiff replied on December 9th stating in outline the magnitude of its undertakings, places of business, etc., with an offer to furnish references as to its financial responsibility, advising that its banking business in Grand Rapids was done at the Old National Bank.

On December 27, 1916, plaintiff again wrote the bank in part as follows:

"It will be satisfactory for you to honor drafts made against us by F. M. Sauer covering shipments of poultry, provided drafts have bill of lading or express receipts attached, until further advice."

Sauer was operating in the vicinity of South Haven where he appears to have had some financial difficulties in former years as was known to defendants. On December 28, 1916, he approached and dealt with them in relation to 12 coops of chickens. Frederick Niffenegger, with whom he transacted the business, stated that, knowing Sauer's reputation for honesty, he would not sell him anything nor give him any credit, but, having learned of "the arrangement that Wilson & Company had previously made with the bank," went to the bank before dealing with Sauer, where the cashier told him of what assurances they had from plain-

tiff and showed him the correspondence. Thus assured, defendants took the draft from Sauer for the purchase price of the 12 coops of chickens within the limits specified in plaintiff's letter and shipped them by express to plaintiff at Grand Rapids, turning in the draft by Sauer against plaintiff covering the shipment with express receipt attached to the Citizens' State Bank of South Haven, receiving credit therefor. The draft and express receipt attached are as follows:

"$141.83
    "SOUTH HAVEN, MICHIGAN, December 28, 1916.
"At sight pay to the order of Niffenegger Brothers $141.83, twelve coops of poultry, 915 pounds, express receipts and invoice attached, value received, and charge the same to account of F. M. Sauer. To Wilson and Company, Ottawa avenue, Grand Rapids, Michigan."

Attached to the draft is the following receipt:

"American Express Company, South Haven, 12-28-16. Received from Niffenegger Brothers, subject to classifications and tariffs in effect on the date hereof, 12 coops of chickens value herein stated and warranted by shipper to be $141.83, consigned to Wilson and Company, Grand Rapids."

Promptly in the regular course of business, on December 29, 1916, the bank sent the draft with express receipt attached to its correspondent in Grand Rapids for collection, where payment was refused by plaintiff on the ground that it had already paid Sauer for the chickens. Correspondence followed between the parties during which Albert Niffenegger sought to reach an adjustment by personal interview with the manager at Grand Rapids who delayed for a time under the excuse that he wished to look it up, but afterwards said that it was in the hands of the head office in Chicago where he advised defendant to go for an adjustment. When in Chicago some time later Niffenegger interviewed plaintiff's manager there in regard to the

claim and was referred back to the Grand Rapids branch as the proper authority to dispose of the claim. Thereafter defendants made purchases of meat from plaintiff as stated, paying the bills for same less the Sauer draft on plaintiff for the consignment of chickens as before related.

On return of the dishonored draft, and after some unsuccessful correspondence with plaintiff, the bank required defendants to take up the paper, which they did, endeavoring for some time by correspondence and personal interviews to induce plaintiff to adjust the claim. The Grand Rapids office insisted it was a matter for the Chicago office to look after and the Chicago office that it was entirely an affair of the Grand Rapids branch. On January 15, 1917, early in the correspondence on the subject, the Grand Rapids office in reply to a letter from defendants stated its reason and illuminated its refusal to honor the draft as proposed in its letter of December 27, 1916, "until further advice," as follows:

"Referring to your letter of January 12th in regard to your draft being turned down for the 12 coops of poultry you shipped us, beg to advise that we paid Mr. F. M. Sauer for this poultry when he was in Grand Rapids. Our reason for doing this is to enable him to get money quickly. Mr. Sauer is not in our employ, but merely buys the stuff and we buy same of him. Believe Mr. Sauer will send you the check direct for your chickens. Trusting this explains everything to your satisfaction and hoping to be favored with your shipments, and if ever you are in the market for beef, sheep, lambs, pork or provisions wish to advise you that we carry a full stock and will be glad to do some business with you."

After getting the "money quickly" for defendants' chickens Sauer did not send any check for the same, but did take the trouble to write plaintiff that he was sick and could not. Defendants did not act on the suggestion to favor plaintiff with further shipments,

but being "on the market" for some meats at a later time did some business with plaintiff in that line, paying all bills for their purchases, less their counterclaim of $141.83 involved here.

At conclusion of the proofs both parties requested a directed verdict. Plaintiff's contention, under its various assignments of error, is in substance, that its claim is admittedly correct and defendants' claimed set-off is not supported by any competent evidence, no privity of contract being shown between the parties; that the draft and correspondence relied upon by defendants were not competent evidence of liability and their admission for that purpose was error. Those points are thus stated in plaintiff's brief:

"(1) The draft and letters show no liability of plaintiff to defendants.

"(2) There is no evidence of a liability of plaintiff to defendants on the basis of a sale and independent of the draft.

"(3) If there is such evidence it only raised a question for the jury."

It is undisputed that defendants knew Sauer's record and would not "sell him anything nor give him any credit" on his own responsibility, as Fred Niffenegger testified. They did not deliver the shipment to him or give him any control over it. Actuated by and depending on information from the bank as to how they could collect their pay from plaintiff for the consignment, they cooped the chickens for transportation and shipped them to Grand Rapids in their own name as consignors direct to plaintiff as consignee, as they testify and the express receipt shows. Plaintiff there received from the express company and appropriated the property so sent it by defendants. So far as disclosed by this record, there is force in defendants' contention that Sauer only figured in the transaction as a convenient medium between the parties, acting for plaintiff in the purchase and issuing of the draft in pay-

ment for poultry sold to or for it by defendants. Conceding the letters do not in themselves tend to show contract relations between the parties, they were fairly admissible to show the consignment was secured by plaintiff on the strength of its credit; that, knowing Sauer's standing and lack of credit in that community, and desiring to purchase produce through him in that locality, plaintiff stressed its own financial responsibility through a local bank and promised to pay under specified conditions for any purchases negotiated by Sauer and shipped to it.

Touching the draft, plaintiff's counsel urges, with supporting citations, that "under the law as settled in this State the payee of an unaccepted check (or draft) has no interest in the drawer's funds and cannot maintain an action against the bank (or drawee) thereon." As a general rule in the law of negotiable paper this may not be questioned where there is nothing else in the case which the holder of the draft can rely on, but the payee of an accepted draft (or check) does have a right of action against the acceptor, or a drawee who by some recognition in writing may have estopped himself from denying liability.

But a short time before this transaction plaintiff had twice written the South Haven bank accepting in effect "until further advice" drafts which it stated "Mr. Sauer will draw" against it on a stated basis of price, covering shipments of poultry to it, provided the drafts had bill of lading or express receipts attached. As the bank was not in the poultry business those letters were manifestly for the purpose of communicating to those who were, the information that plaintiff underwrote purchases shipped to it as specified, through a medium in which they had confidence, and such was the result. Relying upon it defendants cooped for shipment and expressed the poultry to plaintiff on the afternoon of December 28th, at once

turning into the bank at South Haven Sauer's draft on plaintiff for the consignment, within the price authorized, with express receipt attached and in the regular course of business the South Haven bank, on December 29th, forwarded the same to Grand Rapids for collection, all in strict compliance with the conditions specified in plaintiff's letters. Having received the consignment plaintiff accepted and appropriated the poultry but repudiated the draft.

Whether Sauer beat the draft and chickens to Grand Rapids does not appear, but they would not in any event be available to him as evidence of ownership or control over the shipment. Plaintiff received the consignment from defendants, sent by express, while the draft and express receipt came to it for payment through a local bank. Its letter to defendants stating its reason for dishonoring the draft for the chickens admittedly received from them was that it paid Sauer when he was in Grand Rapids "to enable him to get money quickly," if not self-explanatory can best be passed by without expository reflections. Plaintiff intended and well knew when it wrote the bank stating in substance that it would accept "until further advice," Sauer's drafts for chickens shipped it, that the consideration to it for the drafts would come from the parties furnishing the chickens.

Any words amounting to a promise to pay constitute an acceptance. It is undisputed that the shipment of the consignment to plaintiff, the preparation and execution of the draft, and all steps taken in the transaction fully complied with the conditions laid down by plaintiff in its letter stating in substance that it would pay drafts when those conditions were complied with. It was the opinion of the trial court, in view of the undisputed evidence showing all conditions laid down by plaintiff had been observed, that this draft was at the time presented for payment an ac-

cepted draft upon which plaintiff had become liable to the holder. That view does no violence to the law of negotiable paper.

Under our negotiable instrument law, chapter 119, 2 Comp. Laws 1915:

"SEC. (6176) : An unconditional promise in writing to accept a bill before it is drawn is deemed an actual acceptance in favor of every person who, upon the faith thereof, receives the bill for value."

"SEC. (6179) : A bill may be accepted before it is signed by the drawer, or while otherwise incomplete or when it is overdue," etc.

The Supreme Court of the United States, speaking through Chief Justice Marshall, long since said:

"Upon a review of the cases which are reported, this court is of an opinion that a letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance binding upon the person who makes the promise." *Coolidge* v. *Payson.* 2 Wheat. (U. S.) 66.

The course adopted by defendants in this transaction was suggested by plaintiff's letter which they carefully complied with, taking the draft drawn by Sauer on the credit of the letter describing it in terms not to be mistaken. After receipt of defendants' shipment, which was the consideration therefor, plaintiff dishonored the draft. Defendants were entitled to recover by way of set-off the undisputed value of the goods so furnished plaintiff under the facts disclosed by this record.

The judgment is affirmed.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.